IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                PLAINTIFF/RESPONDENT

    V.                        Civil No. 09-5172
                              Criminal No. 07-50052

BRIAN JOHN BERGTHOLD                     DEFENDANT/MOVANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On August 18, 2009, the Defendant/Movant Brian John Bergthold (hereinafter "the Defendant") filed a 28 U.S.C. § 2255 motion. The Defendant was appointed counsel and a hearing was conducted on the motion on February 10, 2010. The parties thereafter submitted post-hearing briefs, and the matter is now ripe for consideration. The undersigned, being well and sufficiently advised, finds and recommends as follows with respect thereto:

**BACKGROUND**

1. On July 26, 2007, the Defendant waived indictment and, pursuant to a written plea agreement (Doc. 17), pled guilty to a two-count Information filed in the Western District of Arkansas.

Count One of the Arkansas Information charged that the Defendant, having custody and control of a minor, permitted that minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § § 2251(b) and (e).

Count Two of the Arkansas Information charged that the Defendant knowingly transported in interstate commerce images of

minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § § 2252(a)(1) and (b)(1).

The Defendant also pled guilty to an Information filed in the District of Oregon and transferred to the Western District of Arkansas, charging him with using minors to produce depictions of sexually explicit conduct, in violation of 18 U.S.C. § § 2251(a) and (d).

2.   The plea agreement, which the Defendant executed prior to the change-of-plea hearing, stated that the maximum terms of imprisonment for Counts One and Two of the Arkansas Information were 30 years and 20 years, respectively.   The plea agreement stated that the maximum term of imprisonment for the Oregon Information was 30 years and the mandatory minimum for this charge was 15 years; however, during the plea hearing, one of the attorneys for the Government noticed that this was erroneous.   The maximum and minimum terms on the Oregon Information were, therefore, crossed through at the plea hearing and corrected by writing in 20 years and 10 years respectively, with the attorneys and the Defendant initialing the corrections. (Doc. 17 at pg. 8.)

3.   On August 22, 2008, a judgment was entered sentencing the Defendant to:

*   360 months imprisonment on Count One of the Arkansas Information;

*   240 months imprisonment on Count Two of the Arkansas Information; and

     *    240 months imprisonment on Count One of the Oregon Information.

The terms were ordered to run consecutively, for a total term of imprisonment of 70 years.  The Defendant was also fined $75,000, ordered to pay $750.50 in restitution and a $300 special assessment, and ordered to serve lifetime supervised release.  The Defendant did not appeal his conviction or sentence.

### GROUNDS FOR § 2255 MOTION

4.  In the motion now before the Court, which the Defendant filed pro se prior to the appointment of counsel, the Defendant asserts five grounds for relief, with grounds one and three being related:

Grounds One and Three: In ground one, Defendant asserts that his plea agreement was not valid, as it incorrectly stated that the maximum statutory punishment for Count Two of the Arkansas Information was 20 years, when the statute in effect at the time of the offense carried a maximum penalty of only 15 years.  In ground three, Defendant asserts that his 20 year sentence on this Count, therefore, exceeded the applicable statutory maximum.

The Government concedes that the plea agreement and presentence report incorrectly set forth a 20-year as opposed to 15-year statutory maximum penalty for Count Two of the Arkansas Information.  The Government explains that the Defendant's offense conduct occurred prior to a change in the law which increased the maximum penalty to 20 years, and that this statutory penalty was

erroneously set forth in the plea agreement and presentence report.  (Doc. 52 at pg. 4 & fn. 1; Doc. 71 at pgs. 4-5.)  The Government, therefore, concedes that the Defendant should be re-sentenced on this Count "to the cap that was in effect at the time."  (§ 2255 Hearing Tr. at pg. 173.)

Ground Two: Defendant asserts that his retained attorney, Mr. Andrew Miller, was ineffective for failing to file a notice of appeal, as instructed by the Defendant.

Ground Four: Defendant asserts that the Court incorrectly applied the 2007 Edition of the Sentencing Guidelines Manual rather than the Guidelines in effect at the time the offenses were committed, in violation of the Ex Post Facto Clause.

Ground Five: Defendant asserts that the Court improperly applied sentencing enhancements for pattern of activity and intent to distribute and also made findings regarding relevant conduct without submitting the facts to a jury.

**DEFENDANT'S TESTIMONY AT THE § 2255 HEARING**

5.   The Defendant testified that his educational background included approximately two years of college in industrial design and business management.  As to his employment background, the Defendant testified that he had owned his own technical writing company, which produced instructional manuals for consumer electronics manufacturers and retailers.  (Id. at pgs. 68-70.)

5.   With regard to the events leading up to his guilty plea, the Defendant testified that before he executed the plea

agreement, he believed that he was realistically facing 8 to 12 years imprisonment, with the worst case scenario being a sentence of 30 years (the statutory maximum for Count One of the Arkansas Information, with the sentences on the other counts running concurrently).  The Defendant explained that he knew there was the possibility of receiving consecutive sentences on the different counts, but, based on his conversations with Mr. Miller, he believed his sentences would run concurrently and that he would be sentenced at the bottom of the Guideline range, as he had no criminal history.  The Defendant acknowledged, however, that he "knew ... going in" that there was no "guarantee" of this.  (Id. at pg. 101.)  Indeed, at the Defendant's change-of-plea hearing, Mr. Miller raised the issue, stating that the Defendant had asked him about the fact that the plea agreement did not say anything "about a concurrent sentence."  The Court advised the Defendant that it could not say at that time whether the sentences would run concurrently or consecutively. (Plea Hearing Tr. at pgs. 10-11.)

6.  As to the errors in the plea agreement, the Defendant testified that when the error regarding the statutory maximum and minimum imprisonment terms on the Oregon Information was noticed during the plea hearing, the terms were corrected and initialed by everyone, including himself.  The Defendant testified that the error caused him to have second thoughts about whether he wanted to proceed with the plea, but "there was no discussion between my attorney and myself [as] to whether or not we want[ed] to stop at

that point and reconsider [the plea agreement], and the judge, to my recollection never asked, do you want to stop and reconsider at this point or [do] you want to take a moment and look at this." (§ 2255 Hearing Tr. at pg. 13.)  When asked why he did not ask for more time to consider the correction, Defendant explained that it was "[s]tage fright or being in front of a bar, pressure of the situation [and] I trusted my attorney."  (Id. at pg. 97.)  The Defendant testified that he never sought to subsequently withdraw his plea because Mr. Miller told him before the plea hearing that once he signed the plea agreement, he "could not go back on it." (Id.)

The transcript of the plea hearing reflects that after the plea agreement was corrected to reduce the statutory maximum on the Oregon Information to 20 years instead of 30 years and the minimum to 10 years instead of 15 years, the Court stated, "Mr. Miller, I assume you and Mr. Bergthold wouldn't object to that, would you?"  Mr. Miller responded, "No, Your Honor."  (Plea Hearing Tr. at pg. 12.)  As the attorneys were making the correction, the Court cautioned, "Well, it's never good to do these things under pressure when you're standing in front of the bar, but let's just take our time and make sure we get this thing right."  (Id. at pg. 14.)  After the correction was made and initialed by the attorneys and the Defendant, the Court asked the Defendant whether he had any questions about it and the Defendant responded that he did not.  (Id. at pg. 16.)  The Court then

expressed "tentative approval" of the plea agreement, and stated, "It'll be reconsidered at the time of sentencing, and it will be then approved if there are no difficulties with it at that time." (Id. at pg. 17.)  The Court went on to advise the Defendant:

> My purpose has been several-fold here in this hearing, to determine that you are okay and know where you are and what you're doing, that you're satisfied with your attorney and that you've had plenty of time to prepare for this hearing and to discuss the matter with him. I've wanted to be sure that you understood and voluntarily executed this agreement that we talked about....
>
> I wanted to be sure that you understood ... the possible consequences that would attend convictions on these charges that were contemplated against you.
>
> We talked about that ... and you've assured me that you understand all of that.... Before I [ask you how you plead], let me inquire, do you have any questions about any of these things that we've talked about or anything else?"

(Id. at pgs. 28-30.)

The Defendant responded, "I do not at this time" and then proceeded to plead guilty.

At the sentencing hearing, the Court asked if there was any reason why the plea agreement, which had been tentatively approved at the plea hearing, should not be finally approved.  No objections were made and the plea agreement was, therefore, granted final approval.  (Id. at pg. 239.)

The Defendant testified at the hearing on his § 2255 motion that he now seeks to withdraw his plea agreement due to the error in the plea agreement regarding the Oregon statutory penalties

(which was corrected at the plea hearing), as well as the error, now conceded by the Government, in the plea agreement reflecting a 20 year maximum sentence rather than a 15 year maximum on Count Two of the Arkansas Information. The Defendant testified that he discovered the latter error through his own legal research in prison. The Defendant contended that due to these errors, "I was never in a position to make an intelligent decision about what I was agreeing to. I was never given the correct facts to agree to, so I was presented with a tainted contract." (§ 2255 Hearing Tr. at pg. 44.) When questioned about this, the Defendant testified:

> Q   [A]re you telling me today that if you had known the correct penalties on Count II of the Arkansas charge, that you would not have pled guilty?
>
> A   I can't actually say that with any conviction, because ... I've never been presented with all three of the counts in a Plea Agreement with the correct sentencing statutes attached to them and say do you want to consider this?... I've never been given that opportunity.... Nobody can say that I would or wouldn't [have pled guilty.]
>
> Q   Well, can you tell me why you wouldn't?
>
> A   Well, when the exposure was higher, I guess I'm thinking that there's more to lose. When the exposure is lower, maybe I think I'm more in a position to negotiate... Maybe I would have said, I'll go to [a] jury trial....
>
> Q   So you think if you would have [known] that you faced five years less in prison, that you would have taken the [gamble] and gone to trial?...
>
> A   The Arkansas Count II? It's a possibility; sure. Yes.
>
> Q   ... [I]f you count the error on the Oregon count [as well], the original Plea Agreement had a total

[error] of 15 years....  do you think if you had known before you signed this original Plea Agreement that you were facing 15 years less than what was represented to you, that you might have gone to trial?

A        Yes, ... [t]hat's truly how I looked at it.  I've not been able to really separate in my mind, well, there was one and then there was the other, because it was all one decision, so yes, I look at it as an aggregate of a 15....I've actually considered it as a tire, and if a tire blows out once, I might try to save it and patch it, but if it blows out twice, I want to replace it.

(<u>Id.</u> at pgs. 98-100.)

The Defendant acknowledged that he did not dispute the factual basis for the plea, as set out in paragraphs 7 through 15 of the plea agreement.  (<u>Id.</u> at pgs. 85-87.)  The Defendant also acknowledged that the "global plea agreement" (encompassing both the Arkansas and Oregon charges) benefitted him, as he possibly would have been exposed to an even greater penalty in Oregon if he had first been convicted on the Arkansas charges.  (<u>Id.</u> at 89.)

7.   With regard to his sentencing, the Defendant testified that he was stunned and felt deflated when he received the pre-sentence report, which computed a Guideline range of 70 years to life.  According to the Defendant, Mr. Miller was "seething" and commented, "I feel like we've just been cut off at the knees." (<u>Id.</u> at pgs. 18-19.)  Mr. Miller read over the pre-sentence report "word for word" with the Defendant and stopped to discuss things that were not clear to the Defendant.  (<u>Id.</u> at pg. 19.)  Mr. Miller thereafter filed numerous objections to the pre-sentence

report, some of which the Court sustained at the sentencing
hearing.

At his sentencing hearing, the Defendant testified that he
had "great respect" for Mr. Miller and that he believed Mr. Miller
had represented him "very capably." (Sentencing Hearing Tr. at
pg. 259.) The Defendant also testified that he pled guilty
because:

> First and foremost, I knew what I had done, and I don't
> believe in being dishonest about it. I didn't want to
> be untruthful. But probably more importantly in my mind
> is the fact that because many of the victims are under
> 18, I didn't want them to have to sit in this chair
> where I am right now and talk about it.

(Id. at pg. 127.)

8. With regard to his right to appeal, the Defendant
testified that when the Court sentenced him to 70 years, he
thought, "There is no way I'm going to not appeal this." (§ 2255
Hearing Tr. at pg. 24.) Mr. Miller visited the Defendant at the
jail the day after the sentencing hearing. According to the
Defendant:

> A    I wanted him or I wished for him to file an appeal
>      and somewhere in our discussion he definitely
>      raised that.
>
> Q    Okay. And did he seem to acknowledge, yes, I will
>      or, no, I won't, or we need to discuss it further?
>      I mean, what do you recall?
>
> A    My recollection was that he was very deflated at
>      that point. I think he had been ramped up to
>      succeed to some extent in the sentencing, and
>      seeing how that was already past and it went the
>      way it went, he kind of tossed in the towel and

> was ready to get me through state court and
> get me out of Benton County Detention
> Center....
>
> Q    ... Was there any finality that day about whether
>      he would, would not, or have to discuss it with
>      you further about an appeal?
>
> A    I can't recall a specific statement in the
>      conversation there.  I had every reason to believe
>      that I was asking for an appeal or that we weren't
>      just going to let that pass....
>
> Q    What were your exact words to him?
>
> A    I do not recall my exact words.  How are we going
>      to fight this or when do we fight this or I can
>      appeal this or I can't recall exactly....  I know
>      that I told him that I wanted to appeal, but I
>      don't recall the language that I used....

(Id. at pgs. 27-28, 32-33.)

On cross-examination, the Defendant acknowledged that he could not "state the date or the time" he instructed Mr. Miller to file an appeal, but testified that it was "[p]robably in that first conversation the next day" after sentencing.  (Id. at pg. 81.)

9.   The Defendant testified that during the 10-day appeal period, he believed Mr. Miller visited him again at the jail and that he was also in contact with Mr. Miller by phone, as they were preparing for his sentencing on related state charges.  However, other than the conversation described above, the Defendant did not bring up his desire to appeal again to Mr. Miller.  (Id. at pgs. 28-30, 103-04.)  The Defendant testified, "I realized when ten days slipped by that we had not [filed an appeal]."  The Defendant

explained that he did not pursue the matter further with Mr. Miller because he "had thrown in the towel mentally at that time ... and emotionally[;] ... I was just totally deflated." (Id. at pgs. 30-31, 35.)  The Defendant testified that he did not advise Mr. Miller to appeal his state sentence because:

> Seeing how my 70 year[] [federal] sentence was trumping that, no, I did not.  At that point definitely his advice and his attitude and I followed his advice was we just want to get you out of here, meaning Benton County is an extremely difficult place to spend any amount of time....  I was told over and over prison is better than this."

(Id. at pg. 35.)

### MR. MILLER'S TESTIMONY AT THE § 2255 HEARING

10.  Mr. Miller described his representation of the Defendant as being "as good a relationship as I've had with a client." (Id. at 160.)  With regard to the Defendant's guilty plea, Mr. Miller testified that the Defendant was facing the possibility of charges in Arkansas state court (sexual assault of as many as seven or eight minor victims), as well as pornography charges in federal court in both Arkansas and Oregon and "there could have been ... in theory a hundred [charges] based on the number of images."  Mr. Miller testified, "if we tried to dig in our heels, it was going to be a matter of time before he was receiving sentences in excess of three or 400 years." (Id. at pg. 111.)  Mr. Miller explained that had the Defendant been convicted on the two federal counts in Arkansas, that conviction would have triggered a 25-year mandatory

Page 12 of  31

minimum on the Oregon count, as well as increased the Defendant's criminal history score, and it would have resulted in "life [on the Oregon count], I have no doubt."  As to the Arkansas state charges, Mr. Miller explained that "they could have gotten a life sentence on him, [because] they could have gotten multiple counts and chances are those counts would have been run consecutive." (Id. at 118.)

According to Mr. Miller, in negotiating a plea to two federal charges in Arkansas and one federal charge in Oregon, "We were trying to get everybody together to say, look, we're ready to accept responsibility and we are ready to get what we need to get. We just want one court and something that we could at least get our hands around as opposed to fighting too many battles on too many fronts."  (Id. at 112.)  With regard to the Defendant's Arkansas state charges, Mr. Miller testified that "the state charges were important because we wanted him to go to federal prison as opposed to state prison."  Mr. Miller explained that given the nature of the Defendant's charges, his safety was a concern and "the federal system is more regimented with regard to individual safety." (Id. at 121.)  Mr. Miller testified that he was able to reach an informal agreement with the state prosecutor "that if [the Defendant's federal] sentence was at least 30 years, that he probably wouldn't touch the state prison system."  (Id.) According to Mr. Miller, the state prosecutor "honored his word"

and the Defendant's state sentence of 40 years was ordered to run concurrently with his federal sentence.

Mr. Miller testified that the Defendant signed the plea agreement prior to the plea hearing and that he did not have any problem with the change made during the plea hearing regarding the Oregon statutory penalties.  When asked whether he believed the Defendant would have chosen to proceed to trial if he had known the penalties were less than what was stated in the plea agreement, Mr. Miller responded, "I think it would – quite frankly, the reverse would have happened.  I mean, it would have been easier to go forward with regard to the plea." (Id. at 115.)

11.  With regard to sentencing, Mr. Miller testified that when the Defendant executed the plea agreement, "we hoped for him to be serving 25 years of his life in the federal system." (Id. at 145.)   Mr. Miller testified that when the Defendant was actually sentenced, "it was [a] difficult legal time because cases had started to come down with regard to production charges that .... accepted the ability for the federal courts to do exactly what Judge Hendren did in this case and that's to essentially ... stack maximum sentences to create a life sentence." (Id. at 116.)

12.  Mr. Miller testified that he visited the Defendant at the jail a day or two after the sentencing hearing and had a lengthy conversation with him about his ability to appeal and

other matters.   Mr. Miller denied that the Defendant ever instructed him to file an appeal.   Mr. Miller testified that he visited the Defendant at least a half a dozen times after the sentencing hearing, as they were still working on his state case, and the Defendant never instructed him to appeal the federal sentence.   Mr. Miller testified that he was confident of this fact "because of the nature of the conversations we had....   He didn't tell me what do and I didn't tell him what to do.   We came to decisions....   We talked a lot about it and ... he had real legitimate reasons for not wanting to appeal."   (Id. at 129.) Mr. Miller explained that the Defendant wanted finality and closure for the victims.   Mr. Miller also explained that if the Defendant had appealed his federal sentence, he would not have been able to proceed with the agreement reached with regard to his state charges.

13.   When asked why he thought the Defendant was now seeking to set aside his plea, Mr. Miller responded, "I have no idea.   I mean, I assume anything is better than life, I guess."   (Id. at 157.)

### Ground Two:   Counsel's Alleged Failure to Appeal

14.   The undersigned will address this claim first, because, if the Defendant prevails on this claim, he is entitled to be re-sentenced and his other claims may, therefore, be rendered moot. See Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000).

Conversely, if the Defendant does not prevail on this claim, his failure to appeal may render his other claims procedurally defaulted. See United States v. Collier, 585 F.3d 1093, 1097 (8th Cir. 2009).

15. Ineffective assistance of counsel claims generally require a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced by this deficiency. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). However, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling a defendant to § 2255 relief, and no inquiry into prejudice or likely success on appeal is necessary. See Watson v. United States, 493 F.3d 960, 963-64 (8th Cir. 2007). For a defendant to succeed on such a claim, he must show that he made his desire to appeal evident to his attorney. See Yodprasit v. United States, 294 F.3d 966, 969 (8th Cir. 2002). "A bare assertion by the [defendant] that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." Barger, 204 F.3d at 1182. A court is required to conduct an evidentiary hearing before making such factual determinations. See Watson, 493 F.3d at 964.

16. The Defendant testified that he could not recall his exact words or when the conversation took place, but that he knew

he told Mr. Miller that he wanted to appeal and that it was"[p]robably in that first conversation the next day after sentencing." (Id. at pg. 81.)  Mr. Miller testified that a day or two after the sentencing hearing, he had a lengthy conversation with the Defendant about his ability to appeal and that he was confident that the Defendant never instructed him to appeal.

The undersigned finds Mr. Miller's testimony to be more credible for the following reasons.  First, at his sentencing hearing, the Defendant testified that he had "great respect" for Mr. Miller and that he believed Mr. Miller had represented him "very capably."  (Sentencing Hearing Tr. at pg. 259.)  Mr. Miller testified that his relationship with the Defendant was as good as he had ever had with a client and that they made decisions together.  The undersigned finds it implausible to believe, given the good relationship that existed between the Defendant and Mr. Miller and the diligent efforts – as reflected in the record – Mr. Miller went to in representing the Defendant, that Mr. Miller would inexplicably ignore the Defendant's request to appeal.

Additionally, Mr. Miller was able to articulate specific reasons the Defendant had for not wanting to appeal – the Defendant wanted finality; the Defendant also wanted closure for the victims (a sentiment the Defendant himself expressed at his sentencing hearing); and an appeal would have jeopardized the informal agreement Mr. Miller had made with the state prosecutor

to run the Defendant's state sentence concurrently with his federal sentence so that the Defendant would not have to serve any time in state prison, where he feared for his safety.  These reasons certainly explain why the Defendant would not have wanted to appeal and the undersigned cannot imagine that Mr. Miller would have simply fabricated them.

Further, the Defendant acknowledged that he was in contact with Mr. Miller during the 10-day appeal period, as they were preparing for the Defendant's state case, yet the Defendant never brought up his desire to appeal again to Mr. Miller.  The Defendant also acknowledged that when he realized an appeal had not been filed within the ten-day period, he did not pursue the matter any further with Mr. Miller.  The Defendant is an educated, very articulate individual and the undersigned finds that had he truly wanted to appeal, he would have raised the issue again with Mr. Miller during the 10-day appeal period and, when he realized an appeal had not been timely filed, he would have immediately contacted Mr. Miller about the matter rather than sitting silent for a year until the filing of the instant § 2255 motion.

Based on the foregoing, the undersigned finds that the Defendant never instructed Mr. Miller to file an appeal.

17.  Where a defendant has not specifically requested an appeal, the reasonableness of counsel's conduct is judged by whether counsel had a duty to consult the defendant about the

possibility of an appeal.  This duty is triggered where there is reason to believe that a rational defendant would want to appeal or where the client has reasonably demonstrated an interest in appealing.  See Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). As stated above, the undersigned credits Mr. Miller's testimony that he had a lengthy conversation with the Defendant about his right to appeal and that the Defendant had very specific reasons for not wanting to appeal.  Accordingly, the undersigned finds that counsel acted reasonably in all respects regarding the Defendant's appeal rights.

The undersigned, therefore, recommends that the Defendant be denied relief on Ground Two of his motion.

## Are the Defendant's Remaining Claims
## Procedurally Defaulted?

18.  At the conclusion of the § 2255 hearing, the undersigned asked the parties whether the Defendant would be deemed to have procedurally defaulted his remaining claims if he did not request his attorney to appeal.  The Government responded that it would waive the procedural default with regard to the Defendant's claim that his 20 year sentence on Count Two of the Arkansas Information exceeded the statutory maximum of 15 years, as the Government conceded this error; however, the Government would not waive the procedural default with regard to the Defendant's remaining claims.  The undersigned directed the parties to submit post-

hearing briefs addressing the procedural default issue and whether the Defendant could demonstrate cause and prejudice excusing the default.

19.   In its post-hearing brief (Doc. 71), the Government argues that the Defendant's sentence on Count Two of the Arkansas Information should be corrected, but that the Defendant procedurally defaulted his remaining claims by failing to file a direct appeal.  The Government also argues that the Defendant's remaining claims are, in any event, without merit.  The Defendant argues in his post-hearing brief (Doc. 74) that Mr. Miller was ineffective for failing to realize that the statutory penalties in the plea agreement and the Defendant's actual sentence exceeded the statutory maximum and failing to "so advise [the Defendant] or otherwise take action necessary to protect [the Defendant's] constitutional rights, including the filing of a direct appeal." (Id. at pg. 10.)

20.   As stated above, the undersigned finds that the Defendant did not request Mr. Miller to file a notice of appeal. The Defendant, therefore, procedurally defaulted his remaining claims and cannot obtain § 2255 relief unless he can demonstrate cause and prejudice excusing the default, see Collier, 585 F.3d at 1097, or the Government waives the default.  The arguments made in the Defendant's post-hearing brief for excusing his default relate to counsel's failure to discover the sentencing error on Count Two

and counsel's failure to seek to correct this error by way of appeal.  The Government has waived Defendant's procedural default on this issue and conceded the error should be corrected.  Thus, cause and prejudice is not at issue with regard to this claim. With regard to the Defendant's remaining claims, the Defendant would have been aware of the bases for these claims at the time judgment was pronounced and could have requested his attorney to appeal on these bases.  The Defendant offers no explanation for why he failed to do so.  The undersigned, therefore, finds that these claims are procedurally defaulted and that the Defendant has failed to demonstrate cause and prejudice to excuse the default. Given this finding, it is unnecessary to reach the merits of these claims, but the undersigned will nevertheless do so, as the parties did so in their submissions and at the § 2255 hearing.

### Grounds One and Three: Error in the Plea Agreement Regarding the Statutory Maximum on Count Two of the Arkansas Information

21.  The Defendant asserts that his plea agreement was not valid and that he should be allowed to withdraw it, as it incorrectly stated that the maximum penalty for Count Two of the Arkansas Information was 20 years, when it was actually 15 years. While not asserted in his § 2255 motion, at the hearing on this motion, the Defendant also asserted that the error in the plea agreement (which was noticed and corrected at his change-of-plea

hearing) regarding the statutory penalties on the Oregon Information rendered his plea agreement invalid.

22. The undersigned will first address the error regarding the Oregon statutory penalties. For a plea agreement to be valid, the defendant must enter into the agreement knowingly and voluntarily. See United States v. Sisco, 576 F.3d 791, 796 (8th Cir. 2009).

The Defendant executed the plea agreement prior to the plea hearing. During the plea hearing, the maximum term of imprisonment of 30 years was crossed through and changed to 20 years, and the mandatory minimum term of imprisonment of 15 years was crossed through and changed to 10 years. The Defendant initialed the correction, but asserts that he had second thoughts about whether he wanted to proceed with the plea. The Defendant contends that he did not have a chance to discuss the matter with his attorney; that he did not ask for more time to consider the correction because of "stage fright" and the pressure of the situation; and that he never sought to withdraw his plea because his attorney had previously told him he "could not go back" on the plea agreement.

The record does not support the Defendant's contentions. At the plea hearing, the Court:

\*    asked if there were any objections to the corrections;

\*      cautioned that, in making the changes, the attorneys needed to take their time and get it right;

\*      advised the Defendant that the Court needed to be sure that he was satisfied with his attorney, that he had had plenty of time to discuss the plea agreement with his attorney, and that he understood the plea agreement and its consequences and voluntarily entered into it;

\*      asked the Defendant whether he had any question about anything in the plea agreement or anything else; and

\*      stated that the Court would only tentatively approve the plea agreement, subject to it being finally approved at the sentencing hearing if there were no difficulties with it at that time.

At the sentencing hearing, the Court gave the parties an opportunity to raise any objections before granting final approval of the plea agreement, but no objections were made. Also at the sentencing hearing, the Defendant stated that he pled guilty because he knew what he "had done" and did not want to be dishonest about it and because he did not want the minor victims to have to testify at a trial. The Defendant further stated that he had "great respect" for his attorney and believed his attorney had represented him "very capably."

As previously stated, the Defendant is a very intelligent, articulate individual and the record reveals that he had a good

relationship with his attorney and communicated with him well. The record also reveals that the Defendant was not hesitant to address the Court. The undersigned finds that had the Defendant truly had second thoughts or any questions about his plea after the corrections to the Oregon penalties were made, he would have raised them. This is demonstrated by the fact that when the Defendant had a question about whether his sentences would run concurrently, he raised the issue with his attorney, who then raised the issue with the Court.

Further, at the plea hearing, the Court gave the Defendant every opportunity to ask questions or raise concerns and stated that it needed to ensure that the Defendant had sufficient time to consider the plea agreement and that he understood it and voluntarily entered into it. At the sentencing hearing, the Court again gave the Defendant an opportunity to state any reason why the plea agreement should not be finally approved, and the Defendant persisted in his plea and admitted his guilt.

Based on the foregoing, the undersigned finds that the Defendant knowingly and voluntarily agreed to the changes made to the plea agreement regarding the Oregon penalties. See United States v. Thomas, 2009 WL 3151189, *1 (8th Cir. 2009) (trial court acted within its discretion in handling defendant's guilty plea; while defendant may have been initially confused about minimum penalty, court provided him ample time to gain understanding of

penalties, defendant admitted his guilt, and defendant expressly stated at sentencing that he wanted to persist in his plea); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity"); United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992) ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledges committing the crime, 'the occasion for setting aside a guilty plea should seldom arise'") (citation omitted)); cf. United States v. Gray, 581 F.3d 749, 755 (8th Cir. 2009) (per curiam) (finding reversible error where the court "omitted mention of any maximum penalty" at plea hearing and overruled defendant's repeated objections at sentencing that he was unaware of maximum penalty when he pled guilty and did not wish to persist in his guilty plea).

23.  The undersigned will next address the error in the plea agreement regarding Count Two of the Arkansas Information.  The Government concedes that the date of the offense conduct triggered a 15 year maximum penalty and that the plea agreement erroneously set forth a 20 year maximum penalty.  The issue then is whether this error serves as grounds for allowing the Defendant to withdraw his plea, as the Defendant contends, or whether the remedy is, as the Government contends, to re-sentence the Defendant on this count to the 15 year maximum penalty.

The Defendant is not entitled to withdraw his plea unless he can demonstrate that he would not have pled guilty had he known that the statutory maximum was 15 years rather than 20 years.  See United States v. Prado, 204 F.3d 843, 846 (8th Cir.), cert. denied, 531 U.S. 1042 (2000); Roberson v. United States, 901 F.2d 1475, 1477 (8th Cir. 1999).  The Defendant was 46 years old at the time of sentencing.  (§ 2255 Hearing Tr. at pg. 25.)  The five-year error in the maximum statutory penalty for Count Two of the Arkansas Information resulted in a total maximum sentence of 70 years, rather than 65 years.  It defies logic to assume that the Defendant would not have pled guilty had he known he faced 65 years rather than 70 years in prison, as both sentences are, in effect, a life sentence for someone the Defendant's age.  Indeed, at the § 2255 hearing, the Defendant acknowledged that he could not say "with any conviction" that he would not have pled guilty if he had known the correct maximum penalty on Count Two of the Arkansas Information.  The Defendant indicated that had he known, at the time he signed the plea agreement, of **both** the error on the Arkansas Count and the error on the Oregon Count, which resulted in an overstatement of his total maximum sentence by 15 years (80 years instead of 65 years), he might have gone to trial.  Again, this defies logic, as both sentences equate to life sentences.

Furthermore, the Defendant did not dispute the factual basis for the plea agreement, acknowledged that the global plea

agreement Mr. Miller negotiated benefitted him, and stated that he wanted to avoid a trial for the sake of the minor victims. Additionally, as Mr. Miller pointed out, the Defendant could have been exposed to even more prison time and to serving time in state prison, where he had concerns for his safety, had he not entered the plea. Mr. Miller also testified that had he and the Defendant known that the statutory penalties were less than what was stated in the plea agreement, it actually would have made the decision to go forward with the plea easier. The undersigned finds this testimony convincing, as the Defendant himself testified that when he executed the plea agreement, he anticipated that his sentences would run concurrently and that his maximum sentence would, therefore, be 30 years.[1] Thus, the possibility of a lower maximum sentence induced the Defendant into pleading guilty, and rebuts any contention the Defendant now makes that he would have proceeded to trial had he known he faced less prison time.

Accordingly, the undersigned finds that the Defendant would have pled guilty even if he had known of the correct maximum penalty for Count Two of the Arkansas Information, and that, he, therefore, should not be allowed to withdraw his plea. The undersigned recommends that the error in the maximum penalty be

---

[1] The undersigned notes that the Defendant cannot claim that he was misled in this regard, as the Defendant acknowledged that he knew there was no guarantee of his sentences running concurrently and the Court specifically advised him at his plea hearing that it could not say whether his sentences would run concurrently or consecutively.

corrected by issuance of an amended judgment reducing the Defendant's sentence on Count Two of the Arkansas Information to the correct statutory maximum of 15 years.

## GROUND FOUR: APPLICATION OF THE 2007 EDITION OF THE SENTENCING GUIDELINES MANUAL

24. The Defendant argues that application of the 2007 Edition of the Guidelines Manual, rather than application of the Guidelines "in effect at the time of the charged activities" resulted in a more severe sentence and, therefore, violated the Ex Post Facto Clause. (Doc. 43 at pg. 7.) The undersigned sees no merit to this argument.

Count One of the Arkansas Information, the most recent offense of conviction, alleged conduct occurring between on or about February 7, 2006 and February 21, 2006. The Sentencing Guidelines direct courts to apply the Guidelines Manual in effect on the date of sentencing unless doing so would violate the Ex Post Facto Clause, in which case the Guidelines Manual in effect on the date that the offense of conviction was committed should be used. See U.S.S.G. § 1B1.11(a) and (b)(1). Under the "one-book rule" if the Defendant is convicted of multiple offenses, the Guidelines Manual in effect on the date of the last offense is to be used. See U.S.S.G. § 1B1.11(b)(3); United States v. Carter, 490 F.3d 641, 643-44 (8th Cir. 2007). The Eighth Circuit Court of Appeals has held that the one-book rule does not violate the Ex

Post Facto Clause, even when it results in a higher Guidelines range, "because defendants have 'fair warning' that the revised [G]uidelines [M]anual will apply to grouped offenses." United States v. Anderson, 570 F.3d 1025, 1033-34 (8th Cir. 2009) (quoting United States v. Cooper, 63 F.3d 761, 762 (8th Cir. 1995) (per curiam), cert. denied, 517 U.S. 1158 (1996)).

In the present case, the 2007 Guidelines Manual was in effect on the date the Defendant was sentenced. Because there is no relevant difference between this edition of the Manual and the Manual in effect on the date the last offense was committed in 2006, the 2007 Edition of the Guidelines Manual was correctly applied and there was no Ex Post Facto violation. See Anderson, 570 F.3d at 1034. Accordingly, the undersigned recommends that the Defendant be denied relief on Ground Four of his motion.

**GROUND FIVE: SENTENCING ENHANCEMENTS**

25. The Defendant argues that the Court erred in applying sentencing enhancements for pattern of activity and intent to distribute and in making findings regarding relevant conduct, as he was "entitled to have elements which increased punishment for his offense decided by a jury." (Doc. 43 at pg. 12.) The Eighth Circuit has specifically rejected this argument. See United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007) (because the Sentencing Guidelines are advisory under United States v. Booker, 543 U.S. 220 (2005), enhancements to the advisory Guidelines range

may be based upon facts found by the sentencing court by a preponderance of the evidence), cert. denied, 552 U.S. 900 (2007); United States v. Stewart, 462 F.3d 960, (8th Cir. 2006) (district court did not violate Sixth Amendment by determining facts supported enhancement for engaging in pattern of activity involving the sexual abuse or exploitation of minor), cert. denied, 551 U.S. 1170 (2007); United States v. Adams, 451 F.3d 471, 472-73 (8th Cir. 2006) (under advisory Sentencing Guidelines, a defendant has no right to a jury determination of the facts that the judge deems relevant; thus, a district court's finding of relevant conduct by a preponderance of the evidence does not offend the Sixth Amendment), cert. denied, 549 U.S. 1172 (2007). The undersigned, therefore, recommends that the Defendant be denied relief on Ground Five of his motion.

### CONCLUSION

26. Based on the foregoing, the undersigned hereby finds and recommends as follows:

* The Defendant should be DENIED relief on Grounds One, Two, Four and Five of his § 2255 motion, as these grounds are without merit.

* The Defendant should be GRANTED relief on Ground Three of his § 2255 motion, to the extent that an amended judgment should be issued reducing the Defendant's sentence on Count Two of

the Arkansas Information to the correct statutory maximum of 15 years.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED June 9, 2010.



/s/ *Erin L. Setser*
_____

    HON. ERIN L. SETSER
    UNITED STATES MAGISTRATE JUDGE